IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| SCOTT WAYNE SUMMEY, | : | CASE NO. 18-11040-WHD |
| | : | |
| Debtor. | : | |
| _____ | : | |
| | : | |
| LAKEVIEW LOAN SERVICING LLC, | : | CONTESTED MATTER |
| | : | |
| Movant. | : | |
| | : | |
| vs. | : | |
| SCOTT WAYNE SUMMEY, | : | |
| MELISSA J. DAVEY, Trustee | : | |
| | : | |
| Respondents. | : | |
| _____ | : | |

## NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY

Movant has filed documents with the court to obtain relief from the automatic stay.

**YOUR RIGHTS MAY BE AFFECTED.  You should read these documents carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant relief from the automatic stay or if you want the court to consider your views on the motion, then you or your attorney shall attend the hearing scheduled to be held on

**June 11, 2020 at 9:00 am at the United States Bankruptcy Court, Lewis R. Morgan Federal Building, 18 Greenville Street, Courtroom 2nd Floor, Newnan, Georgia 30263. Given the current public health crisis, hearings may be telephonic only.  Please check the "Important Information Regarding Court Operations During COVID-19 Outbreak" tab at the top of the GANB Website prior to the hearing for instructions on whether to appear in person or by phone.**

If you or your attorney does not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting relief.

You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Send your response so that it is received by the Clerk at least two business days before the hearing.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

The address of the Clerk's Office is: Clerk, 18 Greenville Street, 2nd Floor, Newnan, Georgia 30263.  You must also send a copy of your response to the undersigned at the address stated below.

Dated this:    5/14/2020

*/s/ Michael J. McCormick*

Michael J. McCormick, GA BAR NO. 485749
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-3918
Michael.McCormick@mccalla.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| SCOTT WAYNE SUMMEY, | ) | CASE NO. 18-11040-WHD |
| | ) | |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| LAKEVIEW LOAN SERVICING LLC, | ) | CONTESTED MATTER |
| | ) | |
| Movant. | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SCOTT WAYNE SUMMEY, | ) | |
| MELISSA J. DAVEY, Trustee | ) | |
| | ) | |
| Respondents. | ) | |

<u>MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u>

COMES NOW Movant and shows this Court the following:

1.

This is a Motion under Section 362(d) of the Bankruptcy Code for relief from the automatic stay for all purposes allowed by law and the contract between the parties, including, but not limited to, the right to foreclose on certain real property.

2.

Movant is the servicer of a loan secured by certain real property in which Debtor claims an interest.  Said real property is security for a promissory note, and is commonly known as 391 Mill Pond Xing Apt A2, Carrollton, Georgia 30116-7591 (the "Property").

3.

Lakeview Loan Servicing LLC services the loan on the Property referenced in this Motion.  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Lakeview Loan Servicing LLC.  Movant, directly or through an agent, has possession of the Note.  The Note is either made payable to Movant or has been duly endorsed.

4.

Debtor has defaulted in making payments which have come due since this case was filed. As of May 12, 2020, Debtor is delinquent for three (3) payments (March, 2020 – May, 2020) in the amount of $902.33 each, less a suspense balance of 310.44, pursuant to the terms of the Note. The total amount of missed post-petition arrearage is $2,396.55. In addition, Movant has also incurred post-petition Attorney Fees and Bankruptcy/Proof of Claim fees of $650.00, as disclosed on the Notice of Post-petition Mortgage Fees, Expenses, and Charges filed on July 16, 2018.

5.

As of May 12, 2020, the unpaid principal balance is $100,701.94, and interest is due thereon in accordance with the Note.

6.

Because of Debtor's default and clear inability to make all required payments, Movant is not adequately protected and shows that there is cause for relief from the automatic stay.

7.

Because the Security Deed so provides, Movant is entitled to its attorney's fees.

8.

Movant requests it be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements.

WHEREFORE, Movant prays (1) for an Order modifying the automatic stay, authorizing Movant, its successors and assigns, to proceed with the exercise of its private power of sale and to foreclose under its Security Deed and appropriate state statutes; (2) for an award of reasonable attorney's fees; (3) that Movant, at its option, be permitted to contact the Debtor via telephone or written correspondence regarding potential loss mitigation options pursuant to applicable non-bankruptcy law, including loan modifications, deeds in lieu of foreclosure, short sales and/or any other potential loan workouts or loss mitigation agreements; (4) for waiver of Bankruptcy Rule 4001 (a)(3); and (5) for such other and further relief as is just and equitable.

*/s/ Michael J. McCormick*
Michael J. McCormick, Georgia BAR NO. 485749
Attorney for Movant
McCalla Raymer Leibert Pierce, LLC
1544 Old Alabama Road
Roswell, Georgia 30076
678-281-3918
866-894-4211
Michael.McCormick@mccalla.com

BANKRUPTCY CASE NO. 18-11040-WHD

CHAPTER 13

CERTIFICATE OF SERVICE

I, Michael J. McCormick, of McCalla Raymer Leibert Pierce, LLC, 1544 Old Alabama Road, Roswell, Georgia 30076-2102, certify:

That on the date below, I served a copy of the within NOTICE OF ASSIGNMENT OF HEARING, together with the MOTION FOR RELIEF FROM THE AUTOMATIC STAY and DECLARATION IN SUPPORT OF THE MOTION FOR RELIEF FROM AUTOMATIC STAY filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, postage prepaid, unless another manner of service is expressly indicated:

Scott Wayne Summey
391 Mill Pond Xing Unit A2
Carrollton, GA 30116

Howard P. Slomka                    *(served via ECF notification)*
Slipakoff & Slomka, PC
Suite 2100
3350 Riverwood Parkway
Atlanta, GA 30339

Melissa J. Davey, Trustee          *(served via ECF notification)*
Melissa J. Davey, Standing Ch 13 Trustee Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on:    5/14/2020    By:    */s/ Michael J. McCormick*
                 (date)              Michael J. McCormick Georgia BAR NO. 485749
                                     Attorney for Movant

5346   472

FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-535-1

PT-61-022-20
CARROLL COUNTY, GEORGIA
REAL ESTATE
TRANSFER TAX PAID $_____
INTANGIBLE TAX PAID $ 339.00
DATE ___7-29-14___
*Alan J. Lee*
CLERK OF SUPERIOR COURT

RETURN TO:
TISINGER VANCE, P.C.
REAL ESTATE DEPARTMENT
100 WAGON YARD PLAZA
CARROLLTON, GA 30117

FILED
GA. CARROLL COUNTY
14 JUL 29  AM 11: 59

V1 WBCD LOAN #

─────────────────[Space Above This Line For Recording Data]─────────────────

**State of Georgia**                        **SECURITY DEED**            FHA Case No.

                                                              MIN:
                                                              MERS PHONE #: 1-888-679-6377

THIS SECURITY DEED ("Security Instrument") is given on    JULY 25, 2014.                 The Grantor is
SCOTT SUMMEY

and whose address is

309 CEDAR ST
CARROLLTON, GA 30117

("Borrower").
"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.**
MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box
2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK

("Lender") is organized and

existing under the laws of    UNITED STATES OF AMERICA,
and has an address of    5151 CORPORATE DR, TROY, MI    48098-2639.

Borrower owes Lender the principal sum of    ***ONE HUNDRED TWELVE THOUSAND NINE HUNDRED SEVENTEEN
AND NO/100*************************************************    Dollars (U.S.    $112,917.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    AUGUST 1, 2044.
The Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under

FHA Georgia Deed of Trust - 4/96                                                    Initials:
Online Documents, Inc.                    **Page    1    of    6**                         GAEFHADE  1212
                                                                                   07-25-2014 16:21

5346   473   V1 WBCD LOAN #

paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in

CARROLL                                    County, Georgia:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
APN #:

which has the address of   391 MILL POND XING APT A2, CARROLLTON

                                                                                    [Street, City]

Georgia   30116-7591            ("Property Address");
         [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
1.   **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2.   **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 **et seq.** and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

Initials:

GAEFHADE  1212
07-25-2014 16:21

5346 474    V1 WBCD LOAN #

**3.  Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4.  Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.  Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.  Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**FHA Georgia Deed of Trust - 4/96**
Online Documents, Inc.                    **Page   3   of   6**          Initials:

GAEFHADE   1212
07-25-2014  16:21

5346   475      V1 WBCD LOAN #

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

5346  476    V1 WBCD LOAN #

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.**

**If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider        ☐ Growing Equity Rider        ☒ Planned Unit Development Rider
☐ Graduated Payment Rider   ☒ Other(s) [specify]          WAIVER OF BORROWER'S RIGHTS RIDER

FHA Georgia Deed of Trust - 4/96
Online Documents, Inc.                    **Page  5  of  6**                    Initials:

GAEFHADE  1212
07-25-2014 16:21

BK PG
5346  477   V1 WBCD LOAN # ███████

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____ (Seal)
SCOTT W. SUMMEY

_____
Unofficial Witness

_____
Notary Public,
CARROLL County

PHIL D. WILKINS
NOTARY
Comm. Exp.
4/01/18
PUBLIC
CARROLL COUNTY, GA

Loan Originator Organization: CHARTERBANK
NMLS ID: ███████
Loan Originator: DAVID JOLLY
NMLS ID: ███████

5346  478

```
┌─────────────────────────────────┐
│ V1 WBCD LOAN #  ███████████      │
│ MIN: ██████████████████████████  │
└─────────────────────────────────┘
┌─────────────────────────────────┐
│ FHA Case No.                     │
│ ██████████████████████████       │
└─────────────────────────────────┘
```

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **25TH** day of **JULY, 2014,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
**391 MILL POND XING APT A2**
**CARROLLTON, GA 30116-7591.**

The Property Address is a part of a planned unit development ("PUD") known as **AUTUMN RIDGE TOWNHOMES**

    **PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

    A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

    B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

    C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA Multistate PUD Rider - 10/95
Online Documents, Inc.        **Page  1  of  2**        Initials: _SS_
P8700PUU 0805
**07-25-2014 16:21**

BK    PG
5346    479

V1 WBCD LOAN # ███████

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions
contained in this PUD Rider.

_____ (Seal)
SCOTT W. SUMMEY

FHA Multistate PUD Rider - 10/95
Online Documents, Inc.                    **Page    2    of   2**                    P8700PUU  0805
                                                                      07-25-2014 16:21

PG
5346  480

## Exhibit "A"
### Legal Description of Property

All that tract or parcel of land lying and being in Land Lot 199 of the 5th District, Carroll County, Georgia, being more particularly shown and described as Unit A-2 on a survey entitled "Final Plat for Autumn Ridge Townhomes, Phase 1", dated September 13, 2001, revised 3/8/02 and further revised 3/15/02, prepared by Crawford & Associates, Inc., certified by Douglas C. Crawford, Georgia Registered Land Surveyor No. 1833, being recorded at Plat Book 77, Page 168, Carroll County, Georgia Public Deed Records. Said plat and the record thereof are by reference incorporated herein.



GEORGIA -

BK    PG
5346  481

Grantor: SCOTT W. SUMMEY

Date: JULY 25, 2014

Loan Number:

Property Address: 391 MILL POND XING APT A2
CARROLLTON, GA 30116-7591

Lender: FLAGSTAR BANK, FSB

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

_____         _____
SCOTT W. SUMMEY                            SEAL

Signed, Sealed and delivered in the presence of:

_____

_____
Notary

© 1997-2009 Online Documents, Inc

GABORWAV 0906
07-25-2014 16:21

V1 WBCD LOAN #

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

on the date set forth above.

PHIL D. WILKINS     Closing Attorney

© 1997-2009 Online Documents, Inc     Page 2 of 2     GABORWAV  0906
07-25-2014 16:21

**RECORDED**
JUL 30 2014
*Alan J. Lee, Clerk*

V1 WBCD LOAN #

**Multistate**

# NOTE

FHA Case No.

MIN:

JULY 25, 2014     Carrollton,        **GEORGIA**
**[Date]**          **[City]**          **[State]**

  **391 MILL POND XING APT A2, CARROLLTON, GA 30116-7591**
        **[Property Address]**

**1. PARTIES**
 "Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK.**

and its successors and assigns.

**2. BORROWER'S PROMISE TO PAY; INTEREST**
 In return for a loan received from Lender, Borrower promises to pay the principal sum of **\*\*\*\*\*\*ONE HUNDRED TWELVE THOUSAND NINE HUNDRED SEVENTEEN AND NO/100\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** Dollars (U.S. **$112,917.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **THREE AND SEVEN-EIGHTHS** percent ( **3.875%** ) per year until the full amount of principal has been paid.

**3. PROMISE TO PAY SECURED**
 Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4. MANNER OF PAYMENT**
 **(A) Time**
 Borrower shall make a payment of principal and interest to Lender on the **1ST** day of each month beginning on **SEPTEMBER 1, 2014.** Any principal and interest remaining on the **1ST** day of **AUGUST, 2044** will be due on that date, which is called the "Maturity Date."
 **(B) Place**
 Payment shall be made at
 **5151 CORPORATE DR**
 **TROY, MI  48098-2639**

or at such place as Lender may designate in writing by notice to Borrower.
 **(C) Amount**
 Each monthly payment of principal and interest will be in the amount of U.S. **$530.98.** This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
 **(D) Allonge to this Note for payment adjustments**
 If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box] ☐ Graduated Payment Allonge  ☐ Growing Equity Allonge
       ☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**
 Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**
 **(A) Late Charge for Overdue Payments**
 If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of **15** calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR**  percent ( **4.000%** ) of the overdue amount of each payment.

 **(B) Default**
 If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.

**Page  1  of  2**

Initials: _GG_

P8700NOT  0804
07-25-2014 16:21

V1 WBCD LOAN #

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____(Seal)
SCOTT W. SUMMEY

Loan Originator Organization: CHARTERBANK
NMLS ID:
Loan Originator: DAVID JOLLY
NMLS ID:

**LAKEVIEW LOAN SERVICING LLC**

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

By: *Melinda McNeal*
MELINDA MCNEAL
VICE PRESIDENT

Pay To Order Of

WITHOUT RECOURSE
LAKEVIEW LOAN SERVICING LLC

BY:

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.                    Page   2   of  2                    P8700NOT  0804
                                                                              07-25-2014 (16:21

5634 395

FILED

Recording Requested By: M&T BANK
When Recorded Return To: Molly Hurley, 8TH FLOOR-ASSIGNMENTS
P.O. BOX 1850, BUFFALO, NY 14240

## CORPORATE ASSIGNMENT OF SECURITY DEED

Carroll, Georgia
**SELLER'S SERVICING #:** ▮▮▮▮▮▮ "SUMMEY"
**SELLER'S LENDER ID#:** Q46

**MIN #:** ▮▮▮▮▮▮  SIS #: 1-888-679-6377

Date of Assignment: May 21st, 2018
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR FLAGSTAR
BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK ITS SUCCESSORS AND ASSIGNS at  PO BOX 2026,
FLINT, MI  48501
Assignee: LAKEVIEW LOAN SERVICING, LLC at 4425 PONCE DE LEON BLVD, CORAL GABLES, FL  33146

Executed By: SCOTT SUMMEY  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS
NOMINEE FOR FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK ITS SUCCESSORS AND
ASSIGNS
Date of Security Deed:  07/25/2014 Recorded:  07/29/2014  in Book/Reel/Liber: 5346 Page/Folio: 472 as Instrument
No.: N/A  In the County of Carroll, State of Georgia.

Property Address: 391 MILL POND XING APT A2, CARROLLTON, GA  30116-7591

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Security Deed having an original principal sum of $112,917.00 with interest, secured thereby, and the full benefit of
all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and
conveys unto the said Assignee, the Assignor's interest under the Security Deed.

    TO HAVE AND TO HOLD the said Security Deed, and the said property unto the said Assignee forever, subject
to the terms contained in said Security Deed.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR FLAGSTAR BANK,
FSB, A FEDERALLY CHARTERED SAVINGS BANK ITS SUCCESSORS AND ASSIGNS
On May 21st, 2018

By:
Joshua E Wikman, Assistant
Secretary

THE FOLLOWING PERSONS HAVE WITNESSED THE EXECUTION OF THIS DOCUMENT:

WITNESS

5634  396

CORPORATE ASSIGNMENT OF SECURITY DEED Page 2 of 2

NOTARY WITNESS

STATE OF New York
COUNTY OF Erie

Subscribed and sworn to (or affirmed) before me on May 21st, 2018, by Joshua E Wikman , proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

WITNESS my hand and official seal,

*Tammy M. Hamilton*

TAMMY M. HAMILTON
Notary Expires: 01/12/2021  #01HA6199021
Qualified in Erie County

TAMMY M. HAMILTON
NOTARY PUBLIC STATE OF NEW YORK
QUALIFIED IN ERIE COUNTY
LIC. #01HA6199021
COMM. EXP. 1/12/2021

(This area for notarial seal)

**RECORDED**

MAY 3 0 2018

*Alan J. Lee, Clerk*